**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| LUTHER LEE WILLIAMS,<br><br>       Petitioner,<br><br>          v.<br><br>SUPERINTENDENT, MCI-<br>SHIRLEY,<br><br><br>       Respondent. | No. 22-cv-10648-AK |

## REPORT AND RECOMMENDATION ON PETITION FOR HABEAS RELIEF

CABELL, U.S.M.J.

### I.  Introduction

Petitioner Luther Lee Williams is presently serving a term of incarceration following his state court conviction after trial on various charges.  He contends the trial was infected by constitutional errors and petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 for an order vacating his conviction. (D. 1).  After careful consideration of the record, and for the reasons explained below, the court recommends that the habeas petition be denied.

II.  **Background**

A. <u>The Underlying Crime</u>

As described by the Massachusetts Appeals Court ("MAC"), the jury could have found the following facts:[1]

> On the evening of November 24, 2016, officers of the Springfield Police Department responded to the sound of gunshots in the direction of 30 Windsor Street.  On arrival, officers found Randall Somerville lying on the ground, yelling that he had been shot; officers observed that Somerville had multiple gunshot wounds to his left leg.  Somerville told officers that a man he knew as "Snipe[s]" shot him.
>
> Earlier that evening, Somerville had received a text message from Robert Miller, whom Somerville had known for three or four years and had seen regularly during that period, seeking to arrange a meeting between Somerville and Snipes so that Somerville could sell drugs to Snipes.  [FN 4],[FN 5] Somerville had met the defendant six or seven times previously and knew him by that nickname.
>
> [FN 4] That [sic] message read, "Snipes at my house, he needs to c.u.  He said he got 90."
>
> [FN 5] Somerville did not initially disclose his true purpose for being at 30 Windsor

---

[1] In habeas proceedings filed by a state prisoner, "a determination of factual issues by the State court should be presumed to be correct." 28 U.S.C. § 2254(e)(1).  The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* This presumption of correctness extends to factual findings by state appellate courts.  *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002).  The petitioner does not contest the MAC's factual findings regarding the narrative facts and regardless has not presented clear and convincing evidence to rebut the presumption that the MAC's factual findings are correct.

Street to police.   Until December, 2017, he
had instead told investigators that he was
there to pick up food.

Prior to the shooting, Somerville and his
girlfriend drove to Miller's home at 30
Windsor Street, where Somerville observed
Miller, Miller's daughter (with whom the
defendant was also familiar), and Snipes on
the porch.  [FN 7]  Miller and his daughter
entered Miller's home, and the defendant
approached Somerville's vehicle.   Somerville
stepped out of his car and exchanged small
talk with the defendant, whom he "had no
trouble identifying."   At this point the
defendant drew a gun, pointed it at
Somerville's head, and told him to "run [his]
pockets"; although Somerville defendant
initially believed that the defendant was
joking, he realized otherwise when the
defendant grabbed the gold chain around
Somerville's neck and fired the gun.   A
struggle ensued in which Somerville was shot
in the leg; just over a minute passed from the
time Somerville exited his vehicle to the
final gunshot.

[FN 7] Somerville's girlfriend, despite being
present during the shooting, remained in the
care [sic] and was unable to identify the
defendant from a photo array or at trial.

Investigators found shell casings and two cell
phones at the scene.   Somerville conceded that
one of the cell phones recovered at the scene
belonged to him and that it contained text
messages showing he was at 30 Windsor Street
to sell drugs, while the other phone belonged
to the defendant's girlfriend, who stated that
the defendant had used the phone on previous
occasions.   Two days after the shooting,
investigators went to Somerville's home with
a photographic array and Somerville identified
the defendant as the shooter, being "[one
hundred percent] positive."

>At trial, the defendant proceeded on the theory that Somerville was lying in his identification of the defendant as the shooter.  To that end, defense counsel vigorously cross-examined Somerville and the other prosecution witnesses, and called three witnesses for the defense, although neither the defendant nor Miller testified.

*Williams*, 99 Mass. App. Ct. at *1-*2 (some footnotes omitted).

B. State Court Proceedings

On January 25, 2017, a Hampden County grand jury indicted the petitioner on charges of armed assault with intent to commit a robbery, assault and battery by means of a firearm, unlawful possession of a firearm as an armed career criminal, and unlawful possession of ammunition as an armed career criminal.  (D. 24).

Following a 2018 jury trial in the Superior Court, the petitioner was convicted on all charges and was sentenced to nine to twelve years on the armed assault charge, four to six years for each unlawful possession charge (concurrent), and four years of probation on the assault and battery charge.  (D. 24).

The petitioner filed a motion for a new trial, which the trial court denied, and then appealed both his conviction and the denial of his motion for a new trial to the MAC.  The MAC consolidated the appeals and issued an opinion affirming both.  *Commonwealth v. Williams*, 99 Mass. App. Ct. 1128 (2021).  The petitioner filed an application for leave to obtain further appellate review

("ALOFAR"), but the Massachusetts Supreme Judicial Court ("SJC") denied the application without comment. *Commonwealth v. Williams*, 488 Mass. 1106 (2021).

C. Relevant Procedural Background

On April 29, 2022, the petitioner initiated this matter by filing a petition asserting three claims for relief:

(1)  The state court decisions regarding the Commonwealth's *Brady* violations were contrary to established Supreme Court precedent;

(2)  The state courts made unreasonable factual determinations under 28 U.S.C. § 2254(d)(2); and

(3)  The state court decision regarding ineffective assistance of trial counsel was contrary to established Supreme Court precedent.

(D. 1).

The petitioner filed his supporting memorandum on September 20, 2022, and the respondent filed its opposition on October 20, 2022. (D. 23, 24). The petitioner filed a reply brief on November 9, 2022. (D. 25).

**III. Standard of Review**

"Federal habeas is not an ordinary error-correcting writ." *Nadworny v. Fair*, 872 F.2d 1093, 1096 (1st Cir. 1989). It "exists to rescue those in custody from the failure to apply federal

rights, correctly or at all." *Id.*  Habeas relief is only available if a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." *Swarthout v. Cooke*, 562 U.S. 216 (2011) (internal quotations and citations omitted).  A writ of habeas corpus thus "does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

A federal court may grant a writ of habeas corpus only if the underlying state court adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d) (as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)).

A state court decision is "contrary" to clearly established federal law only where "the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A decision is an "unreasonable application" of federal law where "the state court correctly identifies the governing legal principle from [the Supreme Court] decisions but

unreasonably applies it to the facts of the particular case." *Id.*
The magnitude of the error "must be great enough to make the
decision unreasonable in the independent and objective judgment of
the federal court." *Brown v. Ruane*, 630 F.3d 62, 67 (1st Cir.
2011) (quoting *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir.
2002)).

Even assuming the state court committed an error, habeas
relief is only appropriate if the error had "a substantial and
injurious effect or influence in determining the jury's verdict."
*Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). In other words,
habeas relief cannot be granted for "harmless" errors, which are
defined as those errors that did not impact the verdict.

Applying these principles to this case, the court discerns no
error in the state courts' consideration and adjudication of the
petitioner's claims.

## IV. <u>Discussion</u>

1. The Petitioner Has Not Fully Exhausted His Claim of
   Ineffective Assistance of Counsel.

The respondent argues as a threshold matter that the
petitioner has not fully exhausted remedies with respect to his
ineffective assistance of counsel claim. The petitioner contends
he has exhausted the claim but states he would be amenable to

amending the petition to withdraw the claim should the court find it has not been fully exhausted.

The exhaustion of remedies requirement, 28 U.S.C. § 2254(b), provides that state prisoners must exhaust their available state court remedies before seeking a federal writ of habeas corpus, thereby "giving the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted). In order to provide state courts with that necessary opportunity, a petitioner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. *Baldwin*, 541 U.S. at 29.

The respondent argues that the petitioner advances a mixed petition, that is, a petition that contains a combination of exhausted and unexhausted claims.[2]  This potentially matters if true because a district court may not adjudicate any portion of a mixed petition, and such a petition may therefore be subject to dismissal. *Rose v. Lundy*, 455 U.S. 509, 510 (1982).  In lieu of dismissal, however, the preferred remedy in this circuit is to give a petitioner the option of voluntarily dismissing the

---

[2] There is no dispute that the petitioner has adequately exhausted his first two claims for relief.

unexhausted claims and proceeding on the exhausted claims. *DeLong v. Dickhaut*, 715 F.3d 382, 387 (1st Cir. 2013) ("When faced with a mixed petition, 'the best practice is for the district court to give the petitioner an opportunity to dismiss the unexhausted claims.'").

The court agrees that the petitioner did not fairly present a federal ineffective assistance of counsel claim to the SJC. Although not exclusive, there are at least five ways a petitioner can fairly present his federal claim to a state court:   (1) "reliance on a specific provision of the Constitution"; (2) "substantive and conspicuous presentation of a federal constitutional claim"; (3) "on-point citation to federal constitutional precedents"; (4) "identification of a particular right specifically guaranteed by the Constitution"; and (5) "assertion of a state-law claim that is functionally identical to a federal constitutional claim." *See Coningford v. Rhode Island*, 640 F.3d 478, 482 (1st Cir. 2011).   The habeas petitioner bears the "heavy burden" of demonstrating compliance with the exhaustion requirement. *Barresi v. Maloney*, 296 F.3d 48, 51 (1st Cir. 2002).

Here, the petitioner cannot show he fairly presented a federal ineffective assistance of counsel claim to the SJC because, simply, he failed to present an ineffective assistance claim to the SJC at all.   The petitioner did by contrast raise the three claims set

forth in the petition to the MAC (albeit in paraphrased form), but he dropped the ineffective assistance claim in seeking further appellate review by the SJC.   Indeed, the introduction to the ALOFAR states unequivocally that the "case raises two issues," "what standard should apply to determining harm when the Commonwealth violates its *Brady* obligation," and "whether a trial judge may go outside the record to reach conclusions about an eyewitness expert's field based on the judge's conclusions about that field. . ."[3]   (D. 18-5, p. 452).   As it is clear that the petitioner consciously chose not to raise a claim of ineffective assistance with the SJC, the court finds he has failed to exhaust the claim for habeas purposes.

As noted above, the petitioner has indicated that should the court come to such a conclusion, he would request permission to amend the petition to withdraw or dismiss the unexhausted claim in lieu of dismissal of the petition.   In light of the petitioner's representation, and in accordance with First Circuit precedent,

---

[3] To be sure, the petitioner argues that (1) his ALOFAR did include two passing references to trial counsel's potential ineffective assistance, and (2) he appended a copy of the MAC's opinion to the ALOFAR submitted to the SJC.   He argues that these two events taken together were "sufficient to alert the Supreme Judicial Court to the issue and to have fairly presented it to that Court."   The court finds this argument wholly unpersuasive where the ALOFAR itself plainly states that it presents just the two issues noted and eschews any mention of a claim of ineffective assistance.   The court moreover has also not been directed to any authority to support the novel proposition that a habeas claim for exhaustion purposes may be deemed to have been fairly presented to the SJC as long as the MAC opinion discussing the claim is appended to the defendant's ALOFAR.

the court will permit the petitioner to amend the petition to withdraw the unexhausted ineffective assistance claim.[4] *See DeLong v. Dickhaut*, 715 F.3d 382, 387 (1st Cir. 2013).

The court turns now to the two exhausted claims.

2. The State Courts did not Unreasonably Apply *Brady v. Maryland.*

During the case, it became apparent that the Commonwealth had failed to disclose to the defense ballistics reports showing that the gun used in the shooting was also used in two other incidents thereafter, while the petitioner was in custody. The trial court determined that this failure to disclose was not prejudicial due to the strength of the Commonwealth's identification evidence and accordingly denied the petitioner's motion for a new trial.

The MAC held that the trial court did not abuse its discretion in so ruling. *Williams*, 99 Mass. App. Ct. at *2-*3. In support of its ruling, the MAC explained that there was no substantial risk that the suppressed evidence would have led to a different outcome where there was strong evidence supporting the petitioner's guilt and the evidence at issue, even if credited, would not have foreclosed the jury from concluding that the petitioner was the shooter:

---

[4] Alternatively, should the resolution of this issue be deemed to be a dispositive ruling most appropriately expressed as a recommendation, the court recommends that the ineffective assistance claim be dismissed.

> The evidence that the defendant was the
> shooter was strong. Somerville knew the
> defendant; had no trouble recognizing and
> distinguishing the defendant from Miller, whom
> he also knew; spoke with the defendant just
> prior to the shooting; and identified the
> defendant both immediately following the
> shooting and later in a lineup. In addition,
> the defendant's girlfriend's cell phone was
> found at the scene of the shooting, Somerville
> had received text messages saying that Snipes
> would be with Miller, and Somerville's
> girlfriend testified that Somerville and the
> person whom he met at 30 Windsor Street were
> in close proximity when they interacted prior
> to the shooting, underscoring Somerville's
> ability to see and identify the person whom he
> met, and who shot him soon afterward. While
> the later use of the weapon by someone other
> than the defendant could have suggested that
> the defendant was not the person who shot
> Somerville, another person's later possession
> of the gun would not have eliminated the
> possibility that the defendant used the gun to
> shoot Somerville on November 24. Given
> Somerville's immediate and consistent
> identification of the defendant, and the
> corroborating evidence of the defendant's
> presence at 30 Windsor Street, it was not an
> abuse of the judge's discretion to determine
> that evidence of the weapon's later use would
> not have caused a "substantial risk" of a
> different conclusion by the jury. *See*
> *Hernandez*, 481 Mass. at 197.

*Id.* at *3.

A *Brady* violation occurs when "the evidence at issue [is]

favorable to the accused, either because it is exculpatory, or

because it is impeaching; that evidence [has] been suppressed by

the State, either willfully or inadvertently; and prejudice

[ensued]." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Brady v. Maryland*, 373 U.S. 83 (1963). An omission of impeachment or exculpatory evidence is prejudicial when "there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281.

The petitioner argues that the state courts unreasonably applied *Brady* in determining that the Commonwealth's failure to disclose the ballistics evidence did not prejudice him. The petitioner notes that the trial court denied the motion for a new trial after finding that the omission of the exculpatory evidence did not create a "substantial risk" of a different outcome had it been included. The petitioner argues that the correct standard to use in considering whether the omission warranted a new trial was whether the evidence if used might have created a "reasonable probability" of a different result. The petitioner argues that there was a reasonable probability here because the evidence undermined the victim's credibility and therefore could have convinced the jury that the victim was lying in his identification. The petitioner contends further that the evidence also supported an argument that the victim, if not lying, identified him as a result of a good-faith mistake.[5]

---

[5] The petitioner's counsel did not raise the defense of good-faith mistake during trial. The petitioner argued before the trial court and the MAC that

The petitioner's arguments fail to persuade.  Indeed, the MAC potentially anticipated this very argument when it noted in a footnote that the omission of the evidence failed to warrant relief even under the more favorable "reasonable possibility" standard articulated in *Commonwealth v. Sullivan*, 478 Mass. 369, 382 (2017) (and thus *Strickler*), for the same reasons specified in its "substantial risk" analysis.  *Williams*, 99 Mass. App. Ct. at *2 n.8.  The MAC also noted that although the information "lent some support to the argument that the defendant was not the culprit," the presence of later ballistics reports would not have lessened the jury's confidence in the outcome where there was "strong evidence" that the petitioner was present during the shooting. This is especially true where the defense already presented some impeachment evidence before the jury and the jury still chose to believe the victim's account.  *See U.S. v. Wright*, 625 F.2d 1017, 1020 (1st Cir. 1980) ("Since the jury chose to believe [the witness] in spite of the testimony . . . that directly contradicted her, we do not see how the [additional testimony] 'would probably produce an acquittal'.").

The court finds no basis to take issue with the MAC's adjudication of this issue.  The MAC found in essence that where

---

this omission constituted ineffective assistance of counsel.  As discussed *supra*, the ineffective assistance claim is deemed to be dismissed or withdrawn

the quantity and quality of the evidence tending to point to the petitioner as the shooter was as strong as it was, the petitioner could not show a reasonable possibility that the omitted evidence would have affected the outcome of the trial, particularly where the evidence still would not have prevented the jury from believing the victim even if fully credited, and the victim was in any event subjected to cross-examination and impeachment evidence.    The court finds the MAC's adjudication to be sound and reasoned.

In light of the foregoing, the court finds that the MAC did not unreasonably apply *Brady* in finding that the trial court did not abuse its discretion in denying the petitioner's motion for a new trial.

3. The Trial Court Did Not Engage in Unreasonable Fact Determinations

The petitioner argues that the state courts made unreasonable factual determinations in denying the petitioner's motion for a new trial.    The pertinent facts are as follows.    At trial, the petitioner sought to impeach the shooting victim's credibility by suggesting that he was lying.    Following trial, the petitioner moved pursuant to Mass. R. Crim. P. 30(b) for a new trial.    He argued, *inter alia*, that his counsel had provided ineffective assistance by not also presenting evidence to support an alternative theory that the victim may have made a good faith but

mistaken identification.  To support the viability of this theory, the petitioner attached an affidavit from Garrett L. Berman, Ph.D., an expert in eyewitness identification.  *Williams*, 99 Mass. App. Ct. at *3.  Broadly speaking, the thrust of Dr. Berman's affidavit was to explain how a witness could come to make a mistaken identification in good faith.  Among other things, Dr. Berman discussed the possibility of spontaneous misidentification and how stress decreases the reliability of eyewitness memory.  He also identified circumstantial factors present during the shooting that may have affected the accuracy of the victim's recollection, such as the stress of the incident, the presence of a weapon, and the victim's expectation for the petitioner to be there.  (D. 1-2 at 44).

The trial court denied the motion for a hearing and new trial. It found that the theory of a good-faith mistaken identity would not have made a difference at trial because "[t]here was very strong evidence that Somerville's identification of the defendant was well grounded." (D. 18-5, p. 58).  In explaining its ruling, the court focused in large part on the facts adduced during the trial that tended to show the victim correctly identified the petitioner as the shooter.  The court noted that a text message between the petitioner and Somerville made it clear that the petitioner would be there; Somerville not only recognized the

petitioner from a distance, despite being in a poorly-lit area, but the two men stood close to each other and spoke to each other for about a minute; Somerville had a good opportunity to see the shooter up close; Somerville engaged in small talk with the shooter before seeing the gun; and was so relaxed that he initially believed the petitioner was joking when he pulled out the gun. *Id.* Further, Somerville's memory was fresh and his identification of the petitioner was unequivocal when police arrived just after the shooting. *Id.* Based on these facts, the trial court concluded that although Dr. Berman's affidavit could have educated the jury on memory and identification by eyewitnesses, it would not have made a difference in this case. *Id.*

On appeal, the petitioner argued that the trial court abused its discretion by not holding an evidentiary hearing or granting his motion "where the judge's findings [were] contrary to the defendant's identification expert's affidavit." The MAC disagreed that the trial judge's findings were contrary to Dr. Berman's affidavit. It found that "the Berman affidavit [did] not address the factors cited by the judge in concluding that Somerville's identification of the defendant as the shooter 'had a reliable basis'", and "did not foreclose the judge's explicit determination that in this case, the evidence supporting the reliability of Somerville's identification of the defendant eclipsed the evidence

that could have supported even a complementary defense of good faith mistaken identity." *Williams*, 99 Mass. App. Ct. at *3. Distilled, and framed more simply, the MAC reasoned that the trial court's findings did not conflict, actually or conceptually, with Dr. Berman's affidavit because Dr. Berman never opined or suggested that the facts leading up to the shooting could lead to a good faith mistaken identification.

Against this backdrop, the petitioner contends that the trial court made two unreasonable factual determinations. First, it "concluded, without basis in the record, that it could divide an incident lasting approximately a minute into observations made before and after the culprit drew a gun and shot Somerville." The petitioner contends that the MAC "compounded" this "unreasonable determination" when it suggested that the trial court could make findings about eyewitness identification "so long as the expert's affidavit did not explicitly preclude the trial court's conclusion." Second, the trial court concluded "that the acquaintance between Somerville and Williams was so significant that Somerville could not have made a spontaneous error, and that Dr. Berman's testimony would not have availed the defense." As such, the petitioner contends that the MAC erred when it found that the trial court did not abuse its discretion when it denied

the petitioner's Rule 30 motion for an evidentiary hearing or new trial. This argument fails summarily for at least two reasons.

First, the petitioner strains to frame this claim as one challenging the reasonableness of the trial court's factual determinations but the real underlying goal, to the court, is to challenge the denial of the petitioner's Rule 30 motion for a new trial. To the extent that is the case, that is, to the extent the petitioner is alleging that the trial court did not properly apply state law when it exercised its discretion and denied his motion, the claim involves the application and/or interpretation of state law and consequently is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 1 (2010)(per curiam)("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law."); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). In that regard, courts in this district have found consistently that the denial of a motion for a new trial generally does not present a cognizable claim for habeas relief. *See e.g., Green v. Kenneway*, 390 F. Supp. 3d 275, 289-90 (D. Mass. 2019)(claim that trial court erred in denying petitioner's motion for new trial held not cognizable on habeas review because such a

claim alleged only an error of state law); *Payne vs. Ryan*, D. Mass., No. 15-CV-12965-PBS (Mar. 9, 2018) (same); *Leng vs. Gelb*, D. Mass., No. 14-CV-10462-ADB (Dec. 22, 2016) (same); *Brown vs. Roden*, D. Mass., No. CIV.A. 12-12000-RGS at *10 (Feb. 11, 2014) ("As a preliminary matter, a claim that the denial of an evidentiary hearing did not comport with state law is not cognizable in a federal habeas proceeding"); *Arnaut vs. Roden*, D. Mass., No. CIV. A. 09-10101-RGS (Oct. 26, 2009) (state court's denial of petitioner's motion for new trial not entitled to habeas review as abuse of discretion).

Second, even assuming the petitioner's claim is reached on the merits, the court finds that the trial court did not engage in unreasonable fact determinations, and indeed did not engage in fact determinations at all. Rather, the judge did no more than to exercise his own common sense in assessing whether the record as a whole presented a real possibility of a mistaken identification as addressed in Dr. Berman's affidavit. The petitioner in turn seeks to conflate the court's articulation of its reasoning with making factual determinations or findings.

Thus, while the petitioner may contend that the trial court found or "concluded" that it could dissect the shooting incident into discrete parts, the trial court made no factual determinations and merely referred to the facts preceding the shooting to explain

why the general concerns raised by Dr. Berman were not of particular concern in this case. Similarly, the trial court did not find, and indeed never even stated, "that the acquaintance between Somerville and Williams was so significant that Somerville could not have made a spontaneous error," but instead merely relied on the ample evidence in the record in assessing and discounting the real risk that the victim misidentified the petitioner as the shooter.

Regardless, even if the trial court's considerations could somehow now be recast as factual determinations, this court agrees with the MAC that the trial court did not abuse its discretion in determining that the Berman affidavit did not warrant an evidentiary hearing and new trial. As the MAC noted, the Berman affidavit did not even address the factors the trial court relied on and thus did not foreclose the trial court's determination that "the evidence supporting the reliability of Somerville's identification of the defendant eclipsed the evidence that could have supported even a complementary defense of good faith mistaken identity."

In sum, the trial court did not engage in unreasonable fact determinations.

## V.    <u>Conclusion</u>

For the foregoing reasons, the court recommends that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.[6]


/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  September 15, 2025

---

[6] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for the First Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988*); United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982).